**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 1:98-cr-329-RCL** |
| **JEROME MARTIN, JR.,**<br>**SAMUEL CARSON,**<br>**WILLIAM KYLE SWEENEY,**<br>**SEAN COATES,** | |
| *Defendants.* | |

## <u>MEMORANDUM OPINION</u>

Defendants—Jerome Martin, Samuel Carson, William Sweeney, and Sean Coates—were convicted for various conspiracies, murders, violent crimes in aid of racketeering, and narcotics-trafficking crimes, among others, and sentenced to lengthy prison terms. Years later, they filed motions under 28 U.S.C. § 2255 to vacate, set aside, or correct their sentences. The Court denied defendants' motions in their entirety. *United States v. Martin*, No. 1:98-cr-329 (RCL), 2021 WL 4989983 (D.D.C. Oct. 27, 2021). Defendants then filed notices of appeal to the D.C. Circuit. *See* ECF Nos. 1287, 1289, 1292, 1297, 1300. The D.C. Circuit held these appeals in abeyance and directed this Court to "determin[e] whether a certificate of appealability is warranted." *See, e.g.*, ECF No. 1295 (citing *Mitchell v. Reno*, 216 F.3d 1126 (D.C. Cir. 2000)). Upon consideration of the parties' § 2255 briefing, applicable law, and the record in this case, the Court will **DENY** defendants' requests for certificates of appealability.

### I.     BACKGROUND

In the 1980s and 1990s, defendants organized and operated a massive narcotics conspiracy around the 200 block of K Street, Southwest, in the District of Columbia. *United States v. Carson*, 455 F.3d 336, 339 (D.C. Cir. 2006). This conspiracy "led to an astonishing amount of violence

1

and a seemingly complete repudiation of civil society and respect for human life." *Id.* After a nine-month trial, a jury returned guilty verdicts against defendants for multiple narcotics, racketeering, murder, and weapons-possession charges. *Id.* at 347; *see* ECF No. 810. The trial court sentenced each defendant to life imprisonment, and the D.C. Circuit affirmed. *Carson*, 455 F.3d at 339. The Supreme Court denied defendants' petitions for writs of certiorari on February 20, 2007. *Carson v. United States*, 549 U.S. 1246 (2007).

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), defendants had until February 20, 2008, to file motions to vacate their sentences under 28 U.S.C. § 2255. *See* 28 U.S.C. § 2255(f)(1). On February 15, 2008, then-Chief Judge Hogan granted a motion by defendant Sweeney to unseal all docket entries, trial materials, and records in this case. ECF No. 1016. Defendants filed their first § 2255 motions before the February 20, 2008 deadline. ECF Nos. 1017, 1020, 1021.[1]

On March 5, 2010, this Court ordered the government to respond to the § 2255 motions. ECF Nos. 1042, 1043, 1044. Coordination problems then reared their head. The defendants expressed a desire to file supplements to their first § 2255 motions. *See, e.g.*, ECF No. 1053 at 2 n.1. In light of this request, the Court granted motions for extensions of time for defendants to file their supplements and for the government to respond. *See, e.g.*, ECF Nos. 1064, 1066, 1073, 1074, 1081. The government consistently emphasized that it did not oppose extensions of time but stated that it did "not waive any timeliness arguments." ECF No. 1053 at 3; *accord* ECF No. 1067 at 1–2; 05/17/13 Tr. 5:1–19, ECF No. 1219.

---

[1] Defendant Carson's motion was not docketed until February 28, 2008—eight days after AEDPA's one-year deadline. ECF No. 1023. Carson blamed the prison mail system for this error and attested that he mailed his § 2255 motion before the deadline. *See* ECF No. 1278 at 5–7. The Court did not address this issue because it denied Carson's claims as vague and conclusory. *Martin*, 2021 WL 4989983, at *6 n.4.

After granting further extensions of time and holding status conferences on December 20, 2012, May 17, 2013, and August 29, 2013, the Court set the supplement deadline for November 28, 2014. *See* ECF Nos. 1122 & 1128. The supplements then began arriving. Defendant Sweeney filed a supplement on November 28, 2014. ECF No. 1140. Defendant Carson—after obtaining another extension—filed his supplement on April 9, 2015. ECF No. 1170. All four defendants filed more supplements between 2015 and 2020. *See, e.g.*, ECF Nos. 1182, 1183, 1184 (asserting claims based on *Johnson v. United States*, 135 S. Ct. 2551 (2015)).

The United States then filed an omnibus brief in opposition. ECF No. 1268. In its brief, the government argued that many claims that defendants brought in supplements fell outside of § 2255(f)'s statute of limitations and did not relate back to timely filed claims. *See generally id.* Defendants Sweeney and Carson replied to this brief. ECF Nos. 1277 & 1278. They asserted that their claims did relate back or, in the alternative, that the Court should equitably toll the statute of limitations. *See* ECF No. 1277 at 8–21. The Court ultimately denied all of defendants' § 2255 claims. ECF No. 1283 & 1284.

With their § 2255 claims denied, defendants filed notices of appeal to the D.C. Circuit. The D.C. Circuit held these appeals in abeyance and referred them to this Court to determine whether these cases warranted certificates of appealability. *See, e.g.*, ECF No. 1295. The Court will now do so.

## II.   LEGAL STANDARD

In 1996, Congress passed AEDPA—an act imposing "gatekeeping" mechanisms that restrict (often frivolous) post-conviction collateral attacks. *See Williams v. Taylor*, 529 U.S. 420, 436 (2000); *Felker v. Turpin*, 518 U.S. 651, 657 (1996). One of these restrictions is a "certificate of appealability." Under AEDPA, a defendant has "no absolute entitlement" to appeal the denial

of a post-conviction motion. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003) (citing 28 U.S.C. § 2253). Instead, when a district court enters a final order adverse to a defendant's § 2255 motion, the court must "issue or deny a certificate of appealability." Rules Governing § 2255 Proceedings, Rule 11(a). The defendant may not appeal a final order without this certificate of appealability, which requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c).

The Supreme Court has counseled that courts should not issue certificates of appealability as "a matter of course." *Miller-El*, 537 U.S. at 337. A defendant must demonstrate that "reasonable jurists could debate whether . . . the petition could have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). When a district court denies relief on procedural grounds, the defendant must show that "jurists of reason would find it debatable" (1) "whether the district court was correct in its procedural ruling" and (2) "whether the petition states a valid claim of the denial of a constitutional right." *United States v. Baxter*, 761 F.3d 17, 26 n.10 (D.C. Cir. 2014) (quoting *Slack*, 529 U.S. at 484).

## III.   DISCUSSION

None of the defendants have moved for a certificate of appealability or briefed disputed issues. The Court therefore treats their notices of appeal as motions for certificates of appealability. *See Slack*, 529 U.S. at 483 (treating a notice of appeal as an application for a certificate of appealability); *West v. Schneiter*, 485 F.3d 393, 395 (7th Cir. 2007) ("A notice of appeal acts as a request for a certificate whether or not the prisoner files a separate application.");

*accord United States v. King*, No. 1:18-cr-318 (JDB), 2022 WL 1165932, at *1 (D.D.C. Apr. 20, 2022).

The Court denied defendants' § 2255 claims on four grounds. First, defendants raised many claims for the first time in supplements filed long after AEDPA's one-year statute of limitations. Second, defendants procedurally defaulted many claims by failing to raise them on direct appeal. Third, defendants offered claims with vague or conclusory arguments. And finally, defendants' remaining claims were meritless. The Court will evaluate its conclusions in turn. After reviewing defendants' § 2255 motions, supplements, and replies, the government's opposition, applicable law, and the record as a whole, the Court will **DENY** defendants' requests for certificates of appealability.

### A. Timeliness Issues

During trial, defendants' counsel repeatedly requested *Brady*, *Giglio*, and Jencks Act materials from the government.[2] The government turned over disputed material either in redacted form or by filing it with the trial court under seal. On direct appeal, defendants' attorneys jointly moved to review these sealed documents. Mot. to Allow Counsel to Review Specific Sealed Portions of the Trial Record ("Mot. to Review"), *United States v. Carson*, No. 02-3015 (D.C. Cir. May 29, 2003), Doc. No. 751872. The attorneys identified thirteen sets of sealed materials, explained their suspicions, and tied those suspicions to suspected *Brady*, *Giglio*, or Jencks Act violations. *See id.* The D.C. Circuit refused to allow defendants to review these documents. *See* Order, *United States v. Carson*, No. 02-3015 (D.C. Cir. Aug. 28, 2003),

---

[2] *See Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); Jencks Act, 18 U.S.C. § 3500.

Doc. No. 769196. Instead, the Circuit ordered defendants to raise these alleged *Brady* violations in their appellate brief. *Id.* Defendants did not do so.

In their § 2255 supplements (filed in 2014 and 2015), defendants Sweeney and Carson included claims alleging (1) *Brady*, *Giglio*, and Jencks Act violations about those sealed materials, (2) ineffective assistance of trial counsel for not challenging the trial court's *in camera* reviewing procedures, and (3) ineffective assistance of appellate counsel for failing to challenge these alleged violations on direct appeal. In defendants' view, relation-back and equitable-tolling principles excused their late filings. *See* ECF Nos. 1277 & 1278. The Court instead concluded that AEDPA's one-year statute of limitations barred these claims. *See, e.g.*, *Martin*, 2021 WL 4989983, at *7–8. It stands by this conclusion for three reasons: (1) AEDPA's statute of limitations ended on February 20, 2008; (2) the claims in defendants' supplements do not relate back to those in their first § 2255 motions; and (3) the facts of this case do not warrant equitable tolling.

### i. *Statute of Limitations Issues*

The Court denied many of defendants' claims because they were raised after AEDPA's one-year limitations period had passed. Post-conviction collateral attacks under § 2255 carry a one-year statute of limitations. 28 U.S.C. § 2255(f). This period begins on the latest of the date when (1) "the judgment of conviction becomes final," (2) an "impediment to making a motion created by governmental action" in violation of the Constitution or statutes is removed, (3) the Supreme Court newly recognizes a right and makes it "retroactively applicable" to collateral proceedings, or (4) "the facts supporting the claim . . . could have been discovered through the exercise of due diligence." *Id.*[3]

---

[3] The Court will rely on cases concerning both § 2244(d) and § 2255(f) in its analysis. Because the limitations provisions in § 2244(d) and § 2255(f) are nearly identical, courts often interpret the two statutes in tandem. *See, e.g.*, *Gonzalez v. Thaler*, 565 U.S. 134, 149 (2012); *Scott v. United States*, 890 F.3d 1239, 1247 n.2 (11th Cir. 2018); *United States v. Winkles*, 795 F.3d 1134, 1140–41 (9th Cir. 2015) (Lamberth, J., sitting by designation).

Critical here is whether defendants' access to alleged *Brady*, *Giglio*, and Jencks Act materials triggered § 2255(f)(4), thereby resetting AEDPA's statute of limitations. Under § 2255(f)(1), defendants had until February 20, 2008 to file their motions. *See* 28 U.S.C. § 2255(f)(1); *Carson v. United States*, 549 U.S. 1246 (2007) (denying petition for writ of certiorari). But Sweeney's counsel attested that the Clerk's Office did not provide her these materials—which had been sealed—until June 17, 2010. Wicks Aff., ECF No. 1280 at 3. In challenging the government's timeliness arguments, Sweeney thus relied on § 2255(f)(4)'s alternative deadline. *See* ECF No. 1277 at 7.

The time limit under § 2255(f)(4) begins "when the prisoner knows (or through diligence could discover) the important facts" supporting a claim, "not when the prisoner recognizes their legal significance." *United States v. Pollard*, 290 F. Supp. 2d 153, 160 (D.D.C. 2003). "The case law is legion in this regard." *Id.* Diligence "must merely be 'due' or 'reasonable' under the circumstances." *United States v. Rodriguez*, 858 F.3d 960, 962 (5th Cir. 2017) (quoting *Starns v. Andrews*, 524 F.3d 612, 619 (5th Cir. 2008)). And it "can be shown by prompt action on the part of the petitioner" once he "realize[s] that he has an interest" in raising the claim. *Johnson v. United States*, 544 U.S. 295, 308 (2005). Until an event in the defendant's case "clearly shows that diligence is in order," § 2255(f)(4) will not apply. *Id.*

Though the D.C. Circuit has not opined on this standard, two conclusions appear prevalent among the circuits that have discussed the issue. First, the facts supporting a § 2255 claim may differ from the evidence involved with the claim. *See McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir. 2007). A defendant has no statutory right to "an extended delay . . . while [he] gathers every possible scrap of evidence that might . . . support his claim." *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998). New information discovered "that merely supports or

strengthens a claim that could have been properly stated without the discovery" will not renew the statute of limitations. *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012). So, some circuits look to awareness of "vital facts" underlying a claim—the facts "without which the claim would necessarily be dismissed." *Id.*; *see McAleese*, 483 F.3d at 214. The Fifth Circuit, stating the standard differently, looks to "the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *In re Davila*, 888 F.3d 179, 189 (5th Cir. 2018) (quoting *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015)).

Second, a defendant's awareness of potential *Brady*, *Giglio*, or Jenks Act material affects this analysis. Criminal defendants "are entitled to place their faith" in the government's representations that they have turned over *Brady*, *Giglio*, or Jencks Act material. *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 293 (3d Cir. 2021); *accord Carter v. Bigelow*, 787 F.3d 1269, 1282 (10th Cir. 2015); *Willis v. Jones*, 329 F. App'x 7, 16–17 (6th Cir. 2009). When a defendant has no reason to suspect that the government violated its disclosure obligations, newly discovered evidence may trigger § 2255(f)(4) and reset AEDPA's statute of limitations. *See Bracey*, 986 F.3d at 293.[4] But once there exists "a reasonable basis for a [defendant] to believe additional investigation will yield undisclosed *Brady* material, that [defendant] must investigate or risk the statutory consequences." *Id.* at 294.[5]

---

[4] *See also Jefferson v. United States*, 730 F.3d 537, 544–45 (6th Cir. 2013) (holding that § 2255(f)(4) "does not require a [defendant] repeatedly to seek out information that the government unconstitutionally failed to disclose"); *cf. In re Will*, 970 F.3d 536, 542–43 (5th Cir. 2020) (explaining, in the second-or-successive context, that a prisoner could not have discovered a *Brady* claim's factual predicate after the government represented that it would produce all *Brady* materials before trial).

[5] *Cf. Smith v. Vannoy*, 848 F. App'x 624, 627 (5th Cir. 2021) (finding that the operative date for a habeas petitioner was when he "became aware" of undisclosed materials); *Solorio v. Muniz*, 896 F.3d 914, 920–21 (9th Cir. 2018) (holding, in the second-or-successive context, that "[a] petitioner must exercise due diligence in investigating new facts where he is on notice that new evidence *might* exist"); *Ford v. Gonzalez*, 683 F.3d 1230, 1236 (9th Cir. 2012)

Contrary to Sweeney's argument, this case's history demonstrates that defendants' limitations period ended on February 20, 2008. Defendants discovered the existence of undisclosed materials during the trial itself, as counsel raised many *Brady*, *Giglio*, and Jencks Act objections during the government's case in chief. *See, e.g.*, 01/30/01 (PM) Tr. 4–6; 02/12/01 (AM) Tr. 5–8; 04/24/01 (PM) Tr. 3. Consider also defendants' motion to unseal these alleged *Brady* materials on direct appeal. Defendants' appellate counsel (1) acknowledged that they objected to the sealing of these materials at trial, (2) laid out specific documents and specific rulings that they believed violated *Brady*, *Giglio*, and the Jencks Act, and (3) explained why they suspected that violations had occurred. *See* Mot. to Review 5–16. Defendants did not rely on the government's representations about *Brady* evidence; they actively challenged the government's failure to disclose certain materials, both at trial and on direct appeal. These facts indicate that defendants had reason to believe that the government may have violated its disclosure obligations years before AEDPA's one-year deadline. The operative deadline for defendants' claims, then, was February 20, 2008.

Case law from other circuits confirms this conclusion. In *Ford v. Gonzalez*, for example, a prisoner discovered that a cooperating witness "had received favorable dispositions of her own criminal cases" during the prisoner's trial. *Ford*, 683 F.3d at 1234. The prisoner discovered this information only after filing his habeas petition. *See id.* In an amended petition, the prisoner added *Brady* and ineffective-assistance claims about the cooperating witness. *Id.* The Ninth Circuit held that these claims were untimely. *Id.* at 1236. "[T]he testimony at trial gave ample reason for a reasonable person in [the prisoner's] position to investigate" whether the witness

---

(refusing to delay AEDPA's statute of limitations because he "relie[d] on a factual predicate and speculative inferences therefrom which [had] been present since the trial itself").

"sought and received benefits in return for assisting law enforcement." *Id.* Similarly, in *Smith v. Vannoy*, a prisoner filed a successive habeas petition raising *Brady* claims. *Smith*, 848 F. App'x at 626. The prisoner conceded that he "knew of the undisclosed evidence in September 2001." *Id.* at 627 n.4. The Fifth Circuit held that "the limitations period began to run" as of that September 2001 date. *Id.* at 627–28. As that court explained, "[t]he facts underlying [the prisoner's] claim consist of the evidentiary materials that were undisclosed to him, and he became aware of their existence in September 2001." *Id.* at 627.

This case is no different. Defendants' trial counsel objected to undisclosed *Brady*, *Giglio*, and Jencks Act materials at many points during the trial. And defendants' appellate counsel knew enough information to file a motion listing the alleged violations in detail. In short, the "trap" that post-conviction defendants sometimes face—file early and risk their undeveloped claims being dismissed, or file late and risk their later-brought claims being time-barred—is not present in this case. *See Jefferson*, 730 F.3d 537, 547 (6th Cir. 2013). Defendants had reason to believe they might have meritorious *Brady*, *Giglio*, or Jencks Act claims long before § 2255(f)(1)'s February 20, 2008 deadline. The Court, therefore, finds that no reasonable jurist could debate that AEDPA's statute of limitations for these claims ended on February 20, 2008.

    *ii.   Relation-Back Issues*

Even if defendants' claims were brought outside of the limitations period, the Court could have considered them if they related back to timely claims. Claims "relate back" if they form part of the same "conduct, transaction, or occurrence" as those originally brought. *Mayle v. Felix*, 545 U.S. 644, 656–57 (2005). But the relevant conduct, transaction, or occurrence cannot be defined as generally as a defendant's entire "trial, conviction, or sentence." *Id.* To do so would circumvent the central policy of relation-back doctrine: ensuring an opposing party has "sufficient

notice" about facts and arguments that a party might bring in an amendment. *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002). So, "an amendment that shares 'some elements and some facts in common'" with an original pleading "does not relate back if its effect is 'to fault [an opposing party] for conduct different from that identified'" in the original pleading. *Jones v. Bernanke*, 557 F.3d 670, 674 (D.C. Cir. 2009) (quoting *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008)). Conclusory claims also bear a close look, as they may not provide the government with fair notice of the grounds on which the defendant asserts relief. *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984).

All four defendants brought untimely claims that did not relate back. The Court will begin with Martin and Coates. Years after AEDPA's one-year deadline, Martin and Coates each raised new ineffective-assistance claims. *See* ECF No. 1233 at 29–36; ECF No. 1166 at 1–7. The Court concluded that these claims fell outside of AEDPA's limitation period and did not relate back. *Martin*, 2021 WL 4989983, at \*11, \*20. The facts underlying Martin's new ineffective-assistance claims (counsel's conduct at trial) differed from those underlying his original *Brady* claims (the government's alleged failure to disclose information), making relation back inappropriate. *See Mayle*, 545 U.S. at 650. Coates's newly raised claims failed as well. A defendant cannot satisfy Rule 15's relation-back standard "merely by raising some type of ineffective assistance in his original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney malfeasance." *United States v. Stover*, 576 F. Supp. 2d 134, 140 (D.D.C. 2008) (quoting *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005)). Coates did just that. *See Martin*, 2021 WL 4989983, at \*20–21 & n.17. The Court finds that no reasonable jurist could debate these conclusions.

Neither did defendant Carson's claims relate back. "New and distinct factual theories raised in an untimely motion . . . do not qualify for relation back under Rule 15(c) in the § 2255 context." *United States v. Palmer*, 902 F. Supp. 2d 1, 13–16 (D.D.C. 2012). Carson's first § 2255 motion consisted of three one-sentence claims: (1) ineffective assistance of counsel for failure to investigate and failure to object to inadmissible evidence; (2) an unconstitutional sentence; and (3) that "Newly Discovered Evidence" established a Fifth Amendment due-process violation. ECF No. 1023 at 5. Though Carson referenced an attached "Memorandum of Law and Facts" in this motion, it was not attached in the filing. *See* ECF No. 1023. The record does not contain this memorandum, and the Court has not been able to locate it. Years later, Carson filed a supplement alleging due-process, *Brady*, and ineffective-assistance claims. ECF No. 1170. These supplemental claims offered new and distinct factual theories because Carson did not provide facts in his first § 2255 motion. Permitting these later-raised claims to relate back would have circumvented AEDPA's focus on finality and disregarded the principle of fair notice that the relation-back doctrine aims to ensure. *See Hall*, 2018 WL 6434772, at *5 (rejecting a relation-back argument because a defendant alleged "bald legal conclusions" and "failed to raise any facts" supporting a claim); *see also Hicks*, 283 F.3d at 388 (noting that "[s]uch a result would be difficult to square with Congress's decision to expedite collateral attacks" through "stringent time restrictions"). Because the Court's conclusion adhered to established case law in this Circuit, the Court finds that no reasonable jurist could debate that Carson's claims did not relate back.

Sweeney's claims require more analysis. In his first § 2255 motion, Sweeney alleged that prosecutors "engaged in deliberate misrepresentations and other prosecutorial misconduct, including but not limited to the nondisclosure and late disclosure of *Brady* information." ECF No. 1017 at 16. He also requested, due to allegedly "cumulative *Brady* errors, both

non[]disclosure and late disclosure . . . that [the] Court review in camera the materials sealed by

the trial court." *Id.* at 13.   After making these general statements, Sweeney alleged a single,

specific *Brady* claim about undisclosed evidence that would have impeached a cooperating

witness. *Id.* at 16.[6]  Sweeney's supplement, however, raised alleged *Brady* violations with respect

to the materials sealed by the trial court. *See* ECF No. 1140 at 8–52. In Sweeney's telling, these

claims "all arise out of the conduct, transaction[,] or occurrence set forth in his initial motion"—

the government's "misconduct and failure to turn over *Brady* information to the defense."

ECF No. 1277 at 10.   The Court disagreed and denied these claims as untimely. *See Martin*,

2021 WL 4989983, at *8.

At issue is the scope of the "conduct, transaction, or occurrence" that Sweeney alleged in

his first motion. *See* Fed. R. Civ. P. 15(c).  The Supreme Court has warned that courts should not

define "conduct, transaction, or occurrence" so broadly as to encompass a prisoner's "trial,

conviction, or sentence," for under that standard "virtually any new claim introduced in an

amended petition will relate back." *Mayle*, 545 U.S. at 656–57.  Instead, courts should assess

whether the motion and amendment "state claims that are tied to a common core of operative

facts." *Id.* at 664.   The problem?  Sweeney first pleaded *Brady* violations at a high level of

generality. *See* ECF No. 1017 at 12, 16 (alleging "nondisclosure and late disclosure" of potential

*Brady* evidence).  These overly broad claims cannot anchor the myriad *Brady* violations Sweeney

raised in his supplement.

*Mayle* and case law from the federal courts of appeals confirm this conclusion.  The

Supreme Court, in *Mayle*, approved of two cases' reasoning about relation-back principles. *See*

*Mayle*, 664 n.7 (citing *Mandacina v. United States*, 328 F.3d 995, 1000–01 (8th Cir. 2003) and

---

[6] The Court disposed of this claim on the merits in its memorandum opinion. *Martin*, 2021 WL 4989983, at *9.

*Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001)).  In *Mandacina*, a prisoner

originally alleged that the government "failed to properly disclose . . . any and all information

related by [a victim] prior to his death in which [the victim] implicated any other person in any

criminal activity." *Mandacina*, 328 F.3d at 1000.  The prisoner amended his motion to include a

*Brady* claim about a previously nondisclosed police report.  *Id.* at 1001.  The Eighth Circuit held

that this claim related back—the police report at issue "support[ed] a defense theory that, before

he died, [the victim] implicated other persons involved in organized criminal activity" with a

motive to retaliate, thereby "providing the government with the notice that the statutes of limitation

were intended to provide." *Id.*  Similarly, in *Woodward*, the Tenth Circuit held relation back proper

when an original claim challenged the trial court's admission of "recanted statements" and a

subsequent claim concerned the court's refusal to let the defendant provide evidence of those

recantations. *Woodward*, 263 F.3d at 1142.  This claim "simply 'clarifie[d] or amplifie[d] a claim

or theory in the original' petition." *Id.*

    But a defendant must allege *some* operative facts out of which their claim arises in order

for later-raised claims to relate back.[7]  Take *Hill v. Mitchell*, 842 F.3d 910 (6th Cir. 2016), which

expressly distinguished *Mandacina* and *Woodward*.  In *Hill*, the defendant had alleged a *Brady*

claim "completely bereft of specific fact allegations or evidentiary support [that] was not tied to

any particular theory of relief." *Id.* at 924.  "The original claim did not identify, even in general

terms, the nature of any suppressed information believed to be exculpatory or impeaching." *Id.*

*Mandacina* and *Woodward*, in contrast, concerned original claims that "presented an actual theory

---

[7] *See, e.g.*, *Ross v. Williams*, 950 F.3d 1160, 1168 (9th Cir. 2020) (construing the common core of operative facts as "defense counsel's purported failure to object" to a state witness's testimony about pickpocketing and theft by distraction); *United States v. Santarelli*, 929 F.3d 95, 101 (3d Cir. 2019) (defining the "common core of operative facts" as a defendant's ineffective-assistance allegation about "allegedly failing to argue . . . that the [presentencing report] included certain errors").

for relief" and amendments that "only 'set forth certain particulars of [those] claim[s].'" *Id.*

(quoting *Cowan v. Stovall*, 645 F.3d 815, 819 (6th Cir. 2011)).  The Sixth Circuit rejected any

analogy to *Mandacina* and *Woodward*.  The defendant's amended claim did not "share a 'common

core of operative facts' with the original [claim] . . . because the original [claim] alleged no

operative facts out of which the amended claim could also be deemed to have arisen." *Id.* at 925

(citing *Mayle*, 545 U.S. at 650).

      Like the defendant in *Hill*, Sweeney alleged *Brady* claims in broad strokes.  He requested

that, "due to the cumulative *Brady* errors [at trial] . . . that [the] Court review in camera the

materials sealed by the trial court." ECF No. 1017 at 13.  Sweeney also stated the following:

> In reviewing the files and records that are currently available[,]
> Counsel for Mr. Sweeney believes that the prosecutors engaged in
> deliberate misrepresentations and other prosecutorial misconduct,
> including but not limited to the nondisclosure and late disclosure of
> *Brady* information and the use of perjured testimony, in violation of
> Mr. Sweeney's constitutional rights, but counsel needs further
> investigation as well as a complete set of discovery, [Jencks Act],
> *Brady*[,] and *Giglio* [material] provided to trial counsel.

*Id.* at 16.  Sweeney then raised allegations about suppressed evidence that would have impeached

James Montgomery's credibility, "[p]rosecutorial misconduct in obtaining testimony by any

means necessary," and misconduct relating to jailhouse confessions.  *Id.* at 16.  These broad

statements did not provide sufficient notice that he would assert *Brady* claims about the sealed

materials in a supplement.  "A claim that the [government] was suppressing an unspecified

*something* is much different from a claim regarding *what*, specifically, the [government] was

suppressing and how it would have benefitted [a defendant] at trial had it been disclosed." *Hill*,

842 F.3d at 924.  Moreover, Sweeney's statements merely assert a suspicion that he *might* discover

constitutional violations.  These statements lack the specific details found in *Mandacina*,

*Woodward*, and other cases that would justify relation back.

Sweeney's argument—defining the relevant "conduct, transaction, or occurrence" as the "misconduct and failure to turn over *Brady* information to the defense"—has another problem. ECF No. 1277 at 10. By construing the "conduct, transaction, or occurrence" to encompass a bare-bones *Brady* claim, even if "devoid of *Brady* material or specific factual allegations," a defendant could "include a catch-all *Brady* claim" in his original motion, then "hope that evidence eventually turns up" because "any subsequent amendment would relate back." *Hill*, 842 F.3d at 925. This approach would "eviscerate AEDPA's statute of limitations for *Brady* claims and would run directly contrary to Congress's intent." *Id.* In light of AEDPA's principle of finality and this relevant case law, the Court finds that no reasonable jurist could debate whether Sweeney's supplemental claims related back.

### iii.   *Equitable Tolling Issues*

Finally, Carson and Sweeney argued that the Court should equitably toll AEDPA's statute of limitations with respect to claims raised in their supplements. ECF Nos. 1277 & 1278. A defendant moving for relief under § 2255 "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *United States v. Baxter*, 761 F.3d 17, 30–31 (D.C. Cir. 2014) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 391 (2013)). "To count as sufficiently 'extraordinary' to support equitable tolling, the circumstances that caused a litigant's delay must have been beyond [his] control." *Head v. Wilson*, 792 F.3d 102, 107 (D.C. Cir. 2015) (citation omitted). The test requires not merely that an extraordinary circumstance existed. Rather, the extraordinary circumstances must have "[made] it impossible to file a petition on time." *United States v. Pollard*, 416 F.3d 48, 56 (D.C. Cir. 2005).

Equitable tolling should be employed "only sparingly." *Cicero*, 214 F.3d at 203 (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).  It requires a "case-by-case" approach drawing "upon decisions made in other similar cases for guidance." *Holland v. Florida*, 560 U.S. 631, 650 (2010).  The threshold showing "necessary to trigger equitable tolling is very high," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002), because courts should not "create a loophole . . . contrary to the legislative intent [of AEDPA] of insuring a greater degree of finality," *Jones v. United States*, 304 F.3d 1035, 1039 (11th Cir. 2002).  In light of these principles, courts in this Circuit rarely permit equitable tolling for § 2255 motions. *See King*, 2022 WL 579483, at *9 (listing the three cases "[i]n the last ten years" in which "courts in this Circuit have granted equitable tolling of § 2255(f)'s limitations period").

Reasonable jurists could not debate whether equitable tolling is appropriate in this context. Defendants contended that equitable tolling was proper on four grounds: (1) misconduct by Sweeney's attorney, (2) Sweeney's lack of counsel after his attorney withdrew, (3) unsettled relation-back and equitable-tolling case law, and (4) the Court's orders extending defendants' time to file their supplements. *See* ECF No. 1277.  The Court disagreed and continues to disagree.

### a. Attorney Misconduct

First, the conduct of Sweeney's attorney did not constitute an extraordinary circumstance for equitable-tolling purposes.  A defendant's attorney is "[his] agent when acting, or failing to act, in furtherance of the litigation," meaning that "the [defendant] must bear the risk of attorney error." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).  To be sure, equitable tolling may be warranted for an attorney who abandons a defendant. *See Maples v. Thomas*, 565 U.S. 266, 282 (2012).  But the attorney's behavior must be "so outrageous or so incompetent as to render it extraordinary." *Pollard*, 416 F.3d at 56.  That type of misconduct is rare indeed.  Courts have

17

routinely held that extraordinary circumstances do not include an attorney who miscalculates filing deadlines,[8] misrepresents the case's status,[9] becomes overburdened with cases,[10] or misunderstands governing law.[11]

Sweeney did not demonstrate that his attorney's conduct, even if negligent, constituted an extraordinary circumstance. He argued that her inaction in the face of his insistent requests for her to file a § 2255 supplement constitutes misconduct or abandonment. ECF No. 1277 at 16. The record tells a different story. Sweeney's attorney communicated with him. *See, e.g.*, ECF No. 1277-3 at 2 (noting a "recent fusillade of emails"); ECF No. 1277-4 at 4 (referencing a March 9, 2010 email). This communication may have been sporadic. *See, e.g.*, ECF No. 1277-4 at 2 (explaining that Sweeney's family "made several attempts to contact [her] to no avail"); ECF No. 1277-5 at 2 (complaining of "[i]nept communication"). But it did not rise to wholesale abandonment. *Compare, e.g.*, *Foley v. Biter*, 793 F.3d 998, 1003 (9th Cir. 2015) (holding that an attorney abandoned a client by failing to communicate, to preserve an appeal, and to withdraw from the case); *Doe v. Busby*, 661 F.3d 1001, 1012 (9th Cir. 2011) (permitting equitable tolling for an attorney who did not file a habeas petition, despite promises to the contrary, and took six months to return requested files). And when the attorney–client relationship reached an impasse, Sweeney's attorney withdrew. ECF No. 1083. While this relationship may not have been ideal,

---

[8] *See, e.g.*, *Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007); *United States v. Rice*, 727 F. App'x 697 (D.C. Cir. 2018); *Byers v. United States*, 561 F.3d 832, 836–37 (8th Cir. 2009); *David v. Hall*, 318 F.3d 343, 346 (1st Cir. 2003); *Wilson v. Battles*, 302 F.3d 745, 748 (7th Cir. 2002).

[9] *See, e.g.*, *United States v. Merise*, No. 1:06-cr-42-1 (JDB), 2020 WL 1930306, at *2 (D.D.C. Apr. 21, 2020) ("[T]he fact, if true, that [the defendant's] attorney advised him 'that there was nothing else for him to do, and not to talk to other prisoners about the case' . . . does not rise to the level of an 'extraordinary circumstance."); *Evans v. Lockett*, No. 1:17-cv-2619 (ABJ), 2019 WL 1003412 (D.D.C. Mar. 1, 2019) (denying equitable tolling when counsel provided "incorrect information" about a defendant's appeals and erroneously "advised that the Supreme Court" was his only avenue for relief).

[10] *See, e.g.*, *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002).

[11] *See, e.g.*, *Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1333–34 (11th Cir. 2017) (reasoning that counsel's "sincere but persistent misreading" of the statute of limitations did not qualify as an extraordinary circumstance).

this conduct does not rise to the level of attorney malfeasance or abandonment constituting an extraordinary circumstance.

### b. *Counsel's Withdrawal and* Pro Se *Representation*

Sweeney next argues that equitable tolling is proper for the period "when no new counsel was appointed to represent him." ECF No. 1277 at 19. Well-established case law forecloses this argument. Courts in this circuit and other circuits have expressly refused equitable tolling for a prisoner proceeding *pro se*. *See, e.g.*, *United States v. Crews*, No. 11-cr-372-1 (EGS), 2021 WL 5798033, at *13 (D.D.C. Dec. 7, 2021); *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006); *Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004); *Delaney v. Matesanz*, 264 F.3d 7, 14 (1st Cir. 2001). Nor will a prisoner's search for new post-conviction counsel constitute an extraordinary circumstance. *See Jihad v. Hvass*, 267 F.3d 803, 806 (8th Cir. 2001). After all, "there generally is no *constitutional* right to effective counsel in collateral proceedings." *United States v. Scurry*, 992 F.3d 1060 (D.C. Cir. 2021) (citing *Garza v. Idaho*, 139 S. Ct. 738, 749 (2019)). No reasonable jurist could find, in light of this case law, that Sweeney's lack of counsel qualified as an extraordinary circumstance.

### c. *Court-Ordered Extensions*

Between 2010 and 2014, the Court entered orders extending defendants' time to file their § 2255 supplements. Sweeney argues that these "blanket extensions of the filing deadline" should justify equitable tolling. ECF No. 1277 at 19–20. Again, case law indicates otherwise. A district court's actions may qualify as an extraordinary circumstance when the court has "affirmatively misled" a defendant. *Pliler v. Ford*, 542 U.S. 225, 234 (2004). The Court did not do so in this case.

Defendants filed their first § 2255 motions in February 2008. ECF Nos. 1017, 1020, 1021, 1023. They expressed their desire to supplement these motions only in March 2010, after the Court ordered the government to respond. *See* ECF Nos. 1042, 1043, 1044. The Court did grant motions for extensions of time for defendants to file their supplements. *See, e.g.*, ECF Nos. 1064, 1066, 1073, 1074 1081.[12] But these extensions came long after AEDPA's one-year statute of limitations had run. In addition, the government—from the first motion for extension of time— consistently emphasized that it would object to newly raised claims as untimely. *See* ECF No. 1053 at 3; ECF No. 1067 at 1–2. The D.C. Circuit has denied equitable tolling for a defendant who argued that he "relied on orders entered by the district judge" when those orders came "two months after the filing deadline had passed" and "three days after [the defendant] filed his [§ 2255] motion." *United States v. Baxter*, 761 F.3d 17, 31 (D.C. Cir. 2014). That logic applies equally here. Defendants can hardly blame the Court for their delay in bringing § 2255 claims based on extensions of time after they missed AEDPA's one-year deadline.

Sweeney highlights *Sossa v. Diaz*, 729 F.3d 1225 (9th Cir. 2013), and *Prieto v. Quarterman*, 456 F.3d 511 (5th Cir. 2006), to argue that court-ordered extensions of time may justify equitable tolling. But the facts here differ greatly from those cases. In *Sossa*, the Ninth Circuit held that a prisoner was entitled to equitable tolling when a federal court dismissed his habeas petition "with leave to amend within thirty days." *Sossa*, 729 F.3d at 1227. By granting the extensions, the judge affirmed a belief that "the [amended] petition would be deemed timely" if filed by the new deadline. *Id.* at 1233. Similarly, in *Prieto*, the Fifth Circuit held equitable

---

[12] As the Court explained above, defendants were aware of the vital facts underlying the sealed-material *Brady* claims long before AEDPA's February 20, 2008 deadline. *See supra* Part III.A.i. Defendants may not have gained access to these materials until June 17, 2010, as Sweeney's attorney has attested. Wicks Aff., ECF No. 1280 at 3. But they had reason to believe these *Brady* claims might be at issue—meaning that § 2255(f)(4) did not reset the statute of limitations upon their discovery of this evidence in 2010.

tolling appropriate when a prisoner had moved to extend his deadline for a habeas petition. *Prieto*, 456 F.3d at 513. The prisoner—who had moved for an extension before AEDPA's statute of limitations had run—had "relied to his detriment" on the extension orders, entitling him to equitable tolling. *Id.*

Defendants' motions for extension of time occurred long after AEDPA's one-year statute of limitations had run. The record shows no effort to supplement their motions or request extensions of time between February 2008 and March 2010. Sweeney—in particular—also missed a July 30, 2012 filing deadline without filing a motion for extension of time. *See* ECF No. 1081. In light of these facts, this case is more analogous to *Baxter* than *Sossa* or *Prieto*. Because the Court's extensions of time came *after* AEDPA's statute of limitations had run, no reasonable jurist could debate whether the Court's actions justified equitable tolling.

### d. *Unsettled Relation-Back and Equitable-Tolling Case Law*

Finally, Sweeney argued that "[u]nsettled case law about the time for filing a habeas petition" qualifies as an extraordinary circumstance. ECF No. 1277 at 21. The Court disagreed. Equitable tolling may be justified for a defendant who "relied on controlling circuit precedent to file what he thought would be a timely federal petition, only to see the circuit precedent subsequently overruled." *Williams v. Filson*, 908 F.3d 546, 558 (9th Cir. 2018); *see York v. Galetka*, 314 F.3d 522, 527–28 (10th Cir. 2003). This case presented nothing akin to this type of reliance. The Supreme Court issued its seminal decisions in these areas—*Mayle*, *Holland*, and *Lawrence*—before 2008. *See Mayle*, 545 U.S. at 644; *Holland*, 560 U.S. at 631; *Lawrence*, 549 U.S. at 327. While the contours of the relation-back and equitable-tolling doctrines may not be fully developed, that development is natural for the "case-by-case approach" required when

applying them. *See Holland*, 560 U.S. at 650. No reasonable jurist could debate that equitable tolling is appropriate while doctrinal issues percolate in the lower courts.

*       *       *

The Court denied many of defendants' § 2255 claims as untimely. It stands by its conclusions. Defendants brought their claims long after § 2255(f)'s one-year statute of limitations. Those claims did not relate back to those in defendants' original motions. And case law established that equitable tolling was not warranted. The Court finds that no reasonable jurist could debate these conclusions.

### B. Procedural Default

Defendants procedurally defaulted many other § 2255 claims by failing to raise them on direct appeal. If a defendant does not raise a claim on direct appeal, he many not raise that claim in a § 2255 motion unless he can show (1) cause excusing the default and (2) prejudice resulting from the alleged error. *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008) (citing *Massaro v. United States*, 538 U.S. 500, 503 (2003)). Defendants rarely identified cause for their defaults. *See Martin*, 2021 WL 4989983, at *4, *9–11. Even assuming cause existed, no prejudice resulted from these alleged errors. *See, e.g., id.* at *10–11. Defendants even misstated the record for many of these procedurally defaulted claims. *See id.* at *10 n.9. In accordance with its reasoning in the memorandum opinion, the Court finds that no reasonable jurist would debate these conclusions.

### C. Summary Denials Based on Conclusory Arguments

Many of defendants' claims involved conclusory arguments lacking factual support. Carson's original § 2255 petition, for example, included one-sentence Fifth and Sixth Amendment claims without listing supporting facts. *Id.* at *6. Sweeney also offered constitutional arguments with little-to-no detail or explanation. *Id.* at *13–14. The Court may deny a § 2255 motion that

states "only bald legal conclusions with no supporting factual allegations." *Sanders v. United States*, 373 U.S. 1, 19 (1963). And "conclusory arguments may be summarily dismissed." *Mitchell v. United States*, 841 F. Supp. 2d 322, 328 (D.D.C. 2012) (quoting *United States v. Geraldo*, 523 F. Supp. 2d 14, 22 (D.D.C. 2007)). The Court finds that no reasonable jurist could debate whether these claims showed the denial of a constitutional right.

### D. Merits Denials

Finally, the Court denied defendants' remaining claims on the merits. The Court divided these claims into three categories: (1) government-misconduct claims, (2) ineffective assistance of counsel claims, and (3) arguments regarding sentences for § 924(c) violations. The Court denied these claims for various reasons. For some, defendants overlooked the record. *See, e.g.*, *Martin*, 2021 WL 4989983, at *7 (pointing out a prior holding that "the government met its *Brady* obligations" with respect to challenged testimony). At other times, defendants misstated or misrepresented the record. *See, e.g.*, *id.* at *15, *18, *20–21 (highlighting misrepresentations by a defendant). Other government-misconduct and ineffective-assistance claims failed because no prejudice resulted. *See, e.g.*, *id.* at *12, *14, *21–22. And many of defendants' arguments incorrectly stated the law or were meritless. *See, e.g.*, *id.* at *16–18. Finally, defendants' § 924(c) arguments ran into opposing case law from the Supreme Court, the federal courts of appeals, the D.C. Court of Appeals, and this Court. *See, e.g.*, *id.* at *24–26. For the remaining claims, the Court finds that no reasonable jurist could debate its conclusions for the reasons stated in the Court's memorandum opinion.

The Court will review its conclusion for one ineffective-assistance claim. Sweeney argued that his appellate counsel provided ineffective assistance by "fail[ing] to note sections of sealed matters" and "to cite authority for those requests." ECF No. 1017 at 12; ECF No. 1140 at 55–67;

ECF No. 1277 at 22.  Essentially, Sweeney argues that his counsel should have brought *Brady* claims about the trial court's sealed materials.  The Court concluded that Sweeney's counsel did not perform defectively.  It reiterates that conclusion here.

Courts evaluate ineffective-assistance claims under *Strickland v. Washington*'s familiar standard.  466 U.S. 668 (1984).  A defendant must show (1) that counsel's performance "fell-below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687–88.  This standard applies equally to appellate counsel.  *Payne v. Stansberry*, 760 F.3d 10, 13 (D.C. Cir. 2014).  And a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Appellate counsel "need not (and should not) raise every nonfrivolous claim" on appeal. *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).  Counsel "may select from among [those claims] in order to maximize the likelihood of success on appeal." *Id.*  A decision not to assert a claim on appeal "is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017).  This analysis must be viewed "from counsel's perspective at the time"—not with the benefit of hindsight. *Smith v. Murray*, 477 U.S. 527, 536 (1986).

The facts boil down as follows.  On direct appeal, Sweeney's appellate counsel moved to review alleged *Brady*, *Giglio*, and Jencks Act materials sealed by the trial court.  The D.C. Circuit denied this motion and requested that counsel "identify . . . specific evidentiary rulings" for the Circuit to review *in camera*.  Order, *Carson*, No. 02-3015 (D.C. Cir. Oct. 2, 2002),

Doc. No. 705475.[13]   So, in a joint motion, defendants identified thirteen sets of potential *Brady* materials they sought to review. *See generally* Mot. to Review. The D.C. Circuit, again, denied the request. Order, *Carson*, No. 02-3015 (D.C. Cir. Aug. 28, 2003), Doc. No. 769196. The Circuit ordered defendants to present any *Brady* arguments in their brief. *Id.* If these arguments "present[ed] a colorable claim," then the Circuit would "review the sealed material *in camera*" to assess whether a constitutional violation occurred. *Id.* Defendants' counsel filed a joint brief containing more than two hundred pages of argument. Br. of Appellants, *United States v. Carson*, No. 02-3015 (D.C. Cir. Apr. 25, 2005). They did not include argument about these potential *Brady* violations.

The Court concluded that Sweeney's counsel did not perform defectively by failing to include these materials. It stands by this conclusion. If "the record does not explicitly disclose . . . counsel's actual strategy or lack thereof," the presumption of effective assistance "may only be rebutted by showing that no sound strategy posited by the [opposing party, here the government] could have supported the conduct." *United States v. Abney*, 812 F.3d 1079, 1087 (D.C. Cir. 2016) (quoting *Thomas v. Varner*, 428 F.3d 491, 500 (3d Cir. 2005)). Nothing on the record or in defendants' briefing shows that no "sound strategy" supported counsel's decision to leave out this argument. Sweeney's § 2255 briefs drew no comparisons between the alleged *Brady* violations and the claims raised on appeal. *See* ECF Nos. 1017, 1140, 1277. Appellate counsel may have determined that other claims had a better chance of success. *Accord United States v. Benbow*, 2021 WL 3268384, at *10 (D.D.C. July 30, 2021) (citing *Abney*, 812 F.3d at 1087). After all, defendants' joint counsel raised two hundred pages' worth of detailed constitutional and

---

[13] *See Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) ("A defendant's right to exculpatory evidence does not include the unsupervised authority to search through the [government's] files."); *United States v. N. Am. Reporting, Inc.*, 761 F.2d 735, 740 (D.C. Cir. 1985) (explaining that it would "defeat [the] design [of the Jencks Act] to hold that the defense may see statements in order to argue whether it should be allowed to see them").

evidentiary arguments—one of which included a judicial-bias argument mentioning the alleged *Brady* violations. Br. of Appellants 90–92.  Without a showing that appellate counsel's conduct lacked a strategic basis, and in light of criminal defendants' lack of a constitutional right "to have appellate counsel raise every nonfrivolous issue that the defendant requests," *Jones*, 463 U.S. at 754 n.7, the Court finds that no reasonable jurist could debate this conclusion.

## IV.   CONCLUSION

For the reasons explained above, the Court finds that no reasonable jurist could debate its procedural rulings or could find that defendants validly stated a claim for the denial of a constitutional right.  The Court will **DENY** defendants' requests for certificates of appealability. A separate order consistent with this memorandum opinion shall issue this date.

Date: May 23, 2022

Royce C. Lamberth
United States District Judge